UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

CENTER FOR INDEPENDENCE OF THE
DISABLED, NEW YORK et al.,

                                     Plaintiffs,

                                    17-CV-2990 (GBD) (VF)

              -against-                    **OPINION & ORDER**

METROPOLITAN TRANSPORTATION
AUTHORITY et al.,

                                 Defendants.
------------------------------------------------------------------X

**VALERIE FIGUEREDO, United States Magistrate Judge.**

On June 2, 2023, Plaintiffs filed a Daubert motion, seeking to preclude the testimony of Defendants' expert, Dr. Alan J. Salzberg, pursuant to Federal Rule of Evidence 702. See ECF Nos. 281, 283, 292. For the reasons discussed below, Plaintiffs' motion to exclude the testimony of Dr. Salzberg is **DENIED**.

## DISCUSSION

Under Federal Rule of Evidence 702, after a witness is qualified as an expert, the party seeking to admit expert testimony must show that, "(1) 'the testimony is based on sufficient facts or data,' (2) 'the testimony is the product of reliable principles and methods,' and (3) 'the expert has reliably applied the principles and methods to the facts of the case.'" U.S. v. Pryor, 474 F. App'x 831, 834 (2d Cir. 2012) (summary order) (quoting Fed. R. Evid. 702). The proponent of the expert's testimony must further show that "the testimony is relevant and will assist the jury."

1

In re Mirena IUS Levonorgestrel-Related Prod. Liab. Litig. (No. II), 341 F. Supp. 3d 213, 240 (S.D.N.Y. 2018), aff'd, 982 F.3d 113 (2d Cir. 2020). The party seeking to introduce expert testimony "has the burden of establishing by a preponderance of the evidence that the admissibility requirements of Rule 702 are satisfied." U.S. v. Williams, 506 F.3d 151, 160 (2d Cir. 2007) (citation omitted).

Trial courts serve as "gatekeep[ers]," responsible for "ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." Daubert v. Merrell Dow Pharm., 509 U.S. 579, 597 (1993); Wills v. Amerada Hess Corp., 379 F.3d 32, 48 (2d Cir. 2004). Expert testimony is relevant if it "'fits' the facts of the case." LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A., 209 F. Supp. 3d 612, 641 (S.D.N.Y. 2016) (quoting Daubert, 509 U.S. at 591-92). Even where the expert's method is reliable, her testimony may fail Daubert's fit requirement where (1) her data "is materially different from the data relevant to the facts of the case," (2) the expert "has failed to consider the necessary factors" or based the analysis "upon a faulty assumption," or (3) the expert's "methodology [was] transposed from one area to a completely different context, and there is no independent research supporting the transposition." Astra Aktiebolag v. Andrx Pharm., Inc., 222 F. Supp. 2d 423, 488 (S.D.N.Y. 2002) (citations omitted), aff'd, 84 F. App'x 76 (Fed. Cir. 2003) (summary order).

"[N]othing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert." Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 157 (1999) (citation and internal quotation marks omitted). Thus, "when an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, Daubert and Rule 702 mandate the

2

exclusion of that unreliable opinion testimony." Ruggiero v. Warner-Lambert Co., 424 F.3d 249, 255 (2d Cir. 2005) (citation and internal quotation marks omitted).

A court should not admit expert testimony that is "'directed solely to lay matters which a jury is capable of understanding and deciding without the expert's help.'" U.S. v. Mulder, 273 F.3d 91, 104 (2d Cir. 2001) (quoting U.S. v. Castillo, 924 F.2d 1227, 1232 (2d Cir. 1991)); see also Atl. Specialty Ins. v. AE Outfitters Retail Co., 970 F. Supp. 2d 278, 291-92 (S.D.N.Y. 2013) (excluding expert's opinion that "a fire causes increasing damage the longer it burns," because "a lay person is entirely capable of reaching this conclusion without the help of an expert"). Further, a court should exclude expert testimony if it is "speculative or conjectural or based on assumptions that are so unrealistic and contradictory as to suggest bad faith." Restivo v. Hessemann, 846 F.3d 547, 577 (2d Cir. 2017) (quoting Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC, 571 F.3d 206, 214 (2d Cir. 2009)). "Finally, as with all evidence, under Rule 403, the Court may exclude testimony if its probative value is substantially outweighed by the danger of unfair prejudice, confusion, or delay." LVL XIII Brands, 209 F. Supp. 3d at 636 (citation omitted). "It is well-established that the trial judge has broad discretion in the matter of the admission or exclusion of expert evidence[.]" Boucher v. U.S. Suzuki Motor Corp., 73 F.3d 18, 21 (2d Cir. 1996) (citation and internal quotation marks omitted).

Defendants' expert, Dr. Alan J. Salzberg submitted reports critiquing two of Plaintiffs' experts, Andrew Schwarz and Sylvia Morse. For the reasons that follow, there is no basis to preclude Dr. Salzberg's expert testimony.

3

### A. Dr. Salzberg's critique of Plaintiffs' expert, Andrew Schwarz

Dr. Alan Salzberg, a statistician, prepared an expert report in 2018 for Defendants, titled "Subway Accessibility Analysis," concerning subway accessibility in New York City. See ECF No. 154-4. Dr. Salzberg was asked by Defendants to review the public elevators in the subway system to determine the elevator, station, and station stop availability for subway riders with mobility disabilities. Id. at 2-3.[1] In rebuttal, Plaintiffs served an expert report from Andrew Schwarz, an economist, who developed a model to demonstrate the practical implications of elevator outages on passengers traveling on certain high-usage subway routes during rush hours. See ECF No. 154-10 at ¶ 2. Schwarz was asked to assume that Dr. Salzberg's calculations were correct and apply Dr. Salzberg's results to possible commuter routes identified through the Metropolitan Transportation Authority's ("MTA") online Trip Planner tool to assess the frequency of service interruptions on routes between 20 subway stations for commuters going into Manhattan from the Bronx, Queens, and Brooklyn during the morning rush hours and returning home during the evening rush hours. Id. ¶¶ 2, 5-6, 8-10, 14, 16. Schwarz's analysis was "intended to highlight the impact of the frequency of inaccessibility calculated by Dr. Salzberg on the commutes of targeted types of individuals." Id. ¶ 6.

In response to Schwarz, Dr. Salzberg submitted a reply report dated May 31, 2019. See ECF No. 271-1. To conduct his analysis, Dr. Salzberg used the same Trip Planner tool, provided by the MTA, that Schwarz relied on to conduct his analysis. Id. at 3, 8. Dr. Salzberg performed his own analysis of the 200 trips considered by Schwarz, correcting for errors he contended

---

[1] The page numbers used herein refer to the original pagination of a document, and not to the pagination introduced in the header of the document by the ECF filing system.

Schwarz had committed in the analysis. Id. at 2, 8-9. For example, Dr. Salzberg identified that Schwarz had not selected the 200 subway trips at random and had excluded subway stations in all of downtown Manhattan. Id. at 2-3. Dr. Salzberg concluded that the median availability of the 200 trips identified by Schwarz was 99.9%. Id. at 11.

After the Second Circuit's remand, Dr. Salzberg submitted an update to his 2018 report, dated September 12, 2022, concerning accessible elevator, station, and station stop availability, using data new data, from 2019 through 2021. See ECF No. 270-1 at 2. In response, Plaintiffs submitted an updated report from Schwarz, dated November 23, 2022. See ECF No. 270-2. Schwarz, using Dr. Salzberg's statistical calculations, again examined the likelihood that a commuter taking a trip along 200 commuting routes involving subway stations commonly used by passengers with mobility disabilities would experience a failed trip during a particular period of time. Id. at ¶¶ 6, 8-9.

Plaintiffs do not challenge Dr. Salzberg's availability calculations. See ECF No. 283 at 2. Instead, Plaintiffs challenge Dr. Salzberg qualification to render an expert opinion and the assumptions underlying his statistical calculations, claiming that they are so flawed as to render his opinion unreliable and unhelpful to the trier of fact. See id. at 16-24. None of these arguments support exclusion of Dr. Salzberg's expert testimony.

Plaintiffs argue that Dr. Salzberg is unqualified to render an expert opinion in this case because he lacks an expertise in transportation systems, commuting patterns in New York City, or accessibility barriers experienced by people with mobility disabilities. See id. at 16-17. But Dr. Salzberg, a statistician, was retained by Defendants to analyze the same data which Plaintiffs' own expert, Schwarz, examined. And Schwarz himself was an economist and not an

5

expert in transportation systems, commuting patterns, or elevator maintenance. See ECF No. 154-10 at ¶ 1. As a statistician, Dr. Salzberg was unquestionably qualified to review the data analyzed by Schwarz and explain why, in his opinion, Schwarz's model was flawed.

Additionally, Plaintiffs argue that Dr. Salzberg's methodologies are unreliable because they are founded on flawed assumptions. See ECF No. 283 at 20-21. All of Plaintiffs' criticisms, focused on potential errors in Dr. Salzberg's methodology or analysis, go to the weight a trier of fact should afford Dr. Salzberg's opinion, not its admissibility. See McCullock v. H.B. Fuller Co., 61 F.3d 1038, 1044 (2d Cir. 1995) (explaining that faults in methodology used by expert is a matter for cross-examination). As the Second Circuit has warned, expert testimony should be excluded where it is "based on assumptions that are 'so unrealistic and contradictory as to suggest bad faith.'" Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC, 571 F.3d 206, 213-14 (2d Cir. 2009) (quoting Boucher, 73 F.3d at 21). Plaintiffs have not shown that any of Dr. Salzberg's assumptions underlying his analysis are so unfounded as to suggest bad faith.

For example, Plaintiffs contend that Dr. Salzberg wrongly assumed that MTA's Trip Planner accurately reflects the availabilities and delays associated with having to reroute or that passengers will receive timely notification of an elevator outage. ECF No. 283 at 6-7. But it was reasonable for Dr. Salzberg to rely on data about route availability and delays maintained by the MTA in the regular course of business and used by the public via the MTA's Trip Planner online tool. Indeed, Schwarz relied on the same Trip Planner data in his analysis. And to the extent such Trip Planner data does not account for the time it might take to transfer between subway lines or buses, then Schwarz's analysis also did not account for those wait times or transfer times. In any

case, Plaintiffs' claim that such data is inaccurate is an argument that goes to the weight to be afforded Dr. Salzberg's expert opinion and which Plaintiffs can raise on cross-examination.

Plaintiffs also fault Dr. Salzberg for deeming a trip "successful" if there was some method of commuting between two stations, regardless of how long the trip took or how onerous the trip was on the commuter. See ECF No. 283 at 4. But, here, too, Dr. Salzberg used the same tool Schwarz used in his analysis—the MTA Trip Planner—to determine alternative itineraries between stations when an elevator outage affected the primary itinerary. See, e.g., ECF No. 270-1 at 3; ECF No. 271-1 at 3, 8. Dr. Salzberg noted that the "substantial differences" between his results and Schwarz's results were that Schwarz assumed that there was only one way to travel by subway between the station-to-station trips identified. See ECF No. 271-1 at 10. For instance, Schwarz determined a route for each trip using MTA's Trip Planner and with few exceptions, used the first itinerary given by Trip Planner. Id. at 3. Schwarz deemed a trip "failed" if one of the elevators on that first itinerary was out of service. Id. at 3-4, 6-7. Dr. Salzberg, by contrast, checked other trip itineraries in the MTA Trip Planner to determine if they were available, when the first listed itinerary had an elevator outage, and counted a trip "successful" if one of the alternative itineraries was available. ECF No. 271-1 at 8.

Dr. Salzberg also considered nearby stations when an elevator outage affected the original station on the route, adding travel time to the itinerary where necessary. See ECF No. 271-1 at 8-9 n.23. For example, for a trip from Borough Hall in Brooklyn, Dr. Salzberg also looked at potential trips from Jay Street, in Brooklyn. Id. He explains that where he "considered starting or ending a trip at a nearby station as an alternative, the distance between stations was within the parameters set by Trip Planner." Id. As Dr. Salzberg noted, in most cases there was

7

more than one possible itinerary between the stations examined and thus his analysis considered the availability of trips based on multiple possible itineraries rather than a single itinerary. Id. at 9-10. At bottom, Dr. Salzberg relied on MTA's Trip Planner to determine if an alternative itinerary existed when the first itinerary could not be completed because of an elevator outage. Dr. Salzberg's reliance on the Trip Planner tool to determine alternative itineraries does not demonstrate any selection bias and nor was it speculative or conjectural, as Plaintiffs claim. To the extent such alternative itineraries are not feasible alternatives for commuters with mobility disabilities, Plaintiffs are free to make that argument, which goes to the weight of Dr. Salzberg's opinion, to the trier of fact.

### B. Dr. Salzberg's critique of Plaintiffs' expert, Sylvia Morse

Plaintiffs submitted an expert rebuttal report from Sylvia Morse, Policy Program Manager at Pratt Center for Community Development, to respond to Dr. Salzberg's analysis as it pertained to the availability of alternative itineraries that relied on the MTA's bus system. See ECF No. 270-3 at 2. Morse focused on the "real-world performance of the bus system and factors affecting rider experience" to challenge two assumptions underlying Dr. Salzberg's opinion: (1) that transit users with mobility disabilities will always be able to access busses as part of alternative itineraries, and (2) that the MTA's Trip Planner itineraries accurately reflect a transit user's travel time. Id. at 2, 4-5. Ultimately, Morse concluded that accessibility barriers and the unreliability of buses impede or delay the completion of alternative itineraries that rely on use of the bus system for transit users with mobility disabilities. Id. at 16-20.

Dr. Salzberg prepared a rebuttal report responding to Morse's analysis. See ECF No. 270-4. Dr. Salzberg criticized Morse for relying on anecdotal customer complaints and opined that

the customer complaints relied on by Morse comprised a tiny fraction of all accessible bus trips. Id. at 3, 9. Dr. Salzberg opined that even if the complaints relied on by Morse are representative of what happens across the entire bus system, the complaints were exceedingly rare when compared to the number of buses in the fleet, the number of rides taken by commuters using reduced-fare metro cards (which are available to riders with qualifying disabilities), and the number of total local bus rides in Brooklyn, Manhattan, Queens, and the Bronx over the relevant time period. Id. at 4-5. In short, Dr. Salzberg opined that Morse's reliance on anecdotal evidence and customer complaints was not a statistically valid basis to support a conclusion that the bus system suffered from widespread barriers to accessibility. Id. at 6

Here, too, Plaintiffs fault Dr. Salzberg's analysis raising arguments that go to the weight that should be afforded the analysis by the trier of fact, and not its admissibility. For instance, Plaintiffs argue that Dr. Salzberg improperly assumed that each complaint concerned only a single ride or a single bus operator. See ECF No. 283 at 12-13. Plaintiffs suggest that a single complaint could concern multiple incidents or bus trips. But Plaintiffs themselves have no evidence to support their assumption that a complaint could pertain to more than a single trip. In other words, even if Dr. Salzberg assumed that a complaint pertained to a single trip (and Defendants contend that Dr. Salzberg made no such assumption), Plaintiffs themselves appear to assume, without support, that a complaint could pertain to multiple trips. Plaintiffs' criticism of Dr. Salzberg's assumption is a criticism that therefore could be levied against Morse's analysis as well.

Plaintiffs fault Dr. Salzberg's conclusion that Trip Planner would notify commuters of elevator outages in real time. See ECF No. 270-4 at 8. According to Dr. Salzberg a rider does not

9

need to spontaneously change her route because Trip Planner provides real-time information about elevator outages. Id. Plaintiffs, of course, are free to challenge the persuasiveness of Dr. Salzberg's opinion by arguing that Trip Planner does not report elevator outages in a timely manner—a point Schwarz makes in his own report. See ECF No. 270-2 at 18. But the assumption by Dr. Salzberg that the Trip Planner tool would timely account for elevator outages is not so unfounded as to render Dr. Salzberg's opinion wholly inadmissible.

In short, there is no basis to exclude Dr. Salzberg's testimony, as all of Plaintiffs' attacks on his opinions go to the weight, not the admissibility, of his testimony.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion to preclude the testimony of Defendants' experts is **DENIED**. The Clerk of Court is instructed to terminate the motion at ECF No. 281.

**SO ORDERED.**

DATED:   New York, New York
         November 9, 2023

_____
VALERIE FIGUEREDO
United States Magistrate Judge